**SOUTHERN PACIFIC COMPANY, Appellant,**

v.

**Charles C. ALEX, Appellee.**

**No. 256.**

Court of Civil Appeals of Texas.

Corpus Christi.

Jan. 26, 1967.

low, recover $690.00 from appellant, defendant below, because of damages sustained to appellee's automobile when it collided with the engine of appellant's train in Bay City, Texas on April 11, 1961.

We have concluded that appellant's points 11 and 12 which assert that the trial court erred in overruling appellant's motion for directed verdict and in overruling appellant's motion to disregard findings and for judgment non obstante veredicto should be sustained.

The verdict of the jury in response to sixteen special issues was in substance as follows: (1) appellant failed to keep a proper lookout, (2) which was a proximate cause of the damages; (3) appellant's train did not emit a timely signal calculated to warn persons about to use the crossing in question, (3A) which was negligence, and (4) a proximate cause of the damages. The jury refused to find that appellee failed to keep a proper lookout (Issue 5), and did not answer the conditionally submitted issue of proximate cause (Issue 6). The jury also found that appellee failed to apply his brakes in time to avoid the collision (Issue 7), but that this was not negligence (Issue 8), and the conditionally submitted issue on proximate cause was not answered (Issue 9). In answer to special issue 10, the jury found that appellee failed to stop his vehicle within 50 feet of, but not less than 15 feet from the nearest rail of appellant's railroad though the train was plainly visible and in hazardous proximity to the crossing, but that such failure was not negligence (Issue 11), and the conditionally submitted issue 12 concerning proximate cause was not answered. The jury refused to find that appellee was operating his vehicle at an excessive speed (Issue 13), and the conditionally submitted issue 14 on proximate cause was not answered. In answer to issue 15 the jury found that the collision was not the result of an unavoidable accident, and in answer to issue 16 that appellee's damages amounted to $690.00.

---

Bell, Gwin & Furse, by Austen H. Furse, Bay City, for appellant.

Christensen, Davis & Stephenson, by Alex Guevara, Jr., Houston, for appellee.

## OPINION

SHARPE, Justice.

This appeal is from a judgment rendered after jury trial that appellee, plaintiff be-

Appellee testified in substance as follows: On April 11, 1961, between 9 and 10 o'clock in the morning he was driving his automobile in a northerly direction on Avenue I in Bay City, Texas. There was a drizzling rain and the street was wet and slick. Appellant's train was traveling from east to west and approached Avenue I from appellee's right going toward his left. There was a house, some shrubs and a tree to appellee's right on the east side of Avenue I. Appellee saw the nose of a diesel engine as it came around the edge of the house or tree on the right and heard a whistle at the same time. That was the first time he heard any sound from the engine. Appellee applied his brakes and attempted to turn to the right—toward the direction from which the train was coming. The brakes held but the tires slid on the pavement and the left front fender of appellee's car collided with the engine at about its front wheel. Appellee's car was not on the railroad track prior to or at the time of the collision. Appellee frequently travelled Avenue I, was familiar with the crossing in question and had seen trains using it. On cross-examination appellee identified four photographs of the crossing which appellant then offered in evidence. These photographs showed the general layout of the crossing and surrounding objects. Two of them showed a standard railroad cross-buck sign on the West side of Avenue I, which appellee said was located there at the time of the accident. Appellee testified that the railroad track is elevated with reference to the rest of the street and the hedges or shrubs to the right. The hedges on the right were at least six feet high and the train was higher, perhaps as much as fifteen feet.

With reference to the distances involved, appellee on direct examination said that at the time he first saw the train and heard the whistle sound, his car was about forty to fifty feet from the track. On cross-examination, appellee first estimated such distance at "forty, fifty or sixty feet." Later he testified several times that such distance could have been as much as eighty

feet. On re-direct examination, appellee again testified that his car could have possibly been as much as eighty feet from the track when he saw the engine and heard the whistle, and finally answered a question propounded by his own counsel as follows:

"Q. Mr. Alex, as you approached this railroad track, and from Defendant's Exhibits, we have shown that there was a tree and a house there, do you believe that you were fifty, sixty, or seventy or eighty feet from the intersection, from the crossing?

"A. I still believe I was fifty or sixty feet, and it could've been a little more or a little less."

With reference to the distance of the engine from Avenue I when appellee first saw it and heard the whistle, appellee on direct examination said the engine was about twenty or twenty-five feet away. On cross-examination, appellee estimated that the train was fifteen or twenty feet from the crossing at that time. Later, he said the train could have been more than forty feet from the crossing when he saw and heard it.

With reference to the speed of the car and the train, appellee testified that his car was traveling at thirty miles an hour before he saw the train, that he took his foot off the accelerator and "it decreased, not much in speed." Appellee estimated the speed of the train at about fifteen miles per hour.

Appellee further testified that the right window of his car was up and the left, on the driver's side, was part way down. He said he was not particularly looking for a train on the occasion in question. Appellee further said that the whistle could have sounded prior to the time he heard it and saw the train. He would not say that the train did not whistle prior to that time. Appellee said that thirty miles per hour is the normal speed limit, and one should be able to drive at that rate even when ap-

proaching the railroad crossing in question knowing that trains sometimes cross there; that one should allow a certain distance in which to stop for a railroad crossing that is known to be frequently used by trains on a day when the pavement is slick. Appellee said he knew he was supposed to stop within fifty feet and not less than fifteen feet from the rail when a train was plainly visible, but he did not stop on the occasion in question. Other evidence in the case was more unfavorable to appellee than his own testimony, but we disregard it in reaching our decision.

Article 6701d, Sec. 86(d), Vernon's Ann. Civ.St., reads as follows:

"Sec. 86. Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad and shall not proceed until he can do so safely when:

\* \* \* \* \* \*

"(d) An approaching train is plainly visible and is in hazardous proximity to such crossing."

■ It thus appears that appellee's own testimony established the following: (1) The train was approaching the crossing in question; (2) The train was "plainly visible" to appellee as he approached the statutory stopping area, or in any event just after he entered it and when his car was at least forty feet from the nearest rail; (3) The train was in "hazardous proximity" to the crossing when it became "plainly visible" to appellee; and (4) Appellee failed to stop his car within the statutory stopping area of within fifty feet but not less than fifteen feet from the nearest rail. Under these conditions, appellee was under a duty to stop his car within the statutory stopping area. Article 6701d, Sec. 86(d), V.A.C.S.; Missouri-Kansas-Texas Railroad Company v. McFerrin, 156 Tex. 69, 291 S.W.2d 931 (1956); Williams v. Texas-New Mexico Railway Company,

334 S.W.2d 510 (Tex.Civ.App., El Paso, 1960, n.w.h.); Missouri Pacific Railroad Co. v. Burns, 382 S.W.2d 761, (Tex.Civ. App., Waco, 1964, n.w.h.). Appellee's failure to so stop established that he violated the statute, constituting negligence per se. Such negligence as a matter of law was a proximate cause of the collision in question. The accident would not have happened if appellee had complied with the duty to stop his car under the conditions prescribed by the statute.

■ We are of the opinion that the evidence did not raise issues as to whether (1) appellee could not have stopped his automobile within the statutory stopping area by the exercise of ordinary care after appellant's train became plainly visible and in hazardous proximity to the crossing, or (2) if appellee could not have so stopped, that his inability to do so was not caused by his own negligence. In this situation the trial court should have granted appellant's motion for directed verdict at the close of all the evidence. However, even if such issues had been raised by the evidence they were neither submitted to the jury nor requested by appellant. Appellee, therefore, failed to carry his burden of establishing that this violation of the statute was legally excusable because of impossibility of complying with it. See Missouri-Kansas-Texas v. McFerrin, supra, and the Article "Special Issues Under Article 6701d, Section 86(d), of the Texas Civil Statutes" by Hon. Robert W. Calvert, then Associate Justice, now Chief Justice of the Supreme Court of Texas, 34 Texas Law Review 971 (1956). The trial court erred in failing to disregard the jury finding on special issue eleven and in refusing to render judgment in favor of appellant pursuant to motion filed by it.

Since appellant was entitled to judgment in any event, we deem it unnecessary to discuss appellant's points one through ten.

The judgment of the trial court is reversed and here rendered that appellee take nothing by this suit.